**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Right At Home Glass LLC,<br><br>Plaintiff,<br><br>v.<br><br>Liberty Mutual Group Incorporated, *et al.*,<br><br>Defendants. | No. CV-18-04190-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Liberty Mutual's Motion to Dismiss and Motion to Compel Appraisal (Doc. 5, Mot.). Plaintiff Right At Home Glass has filed a Response (Doc. 18, Resp.), and Defendant a Reply (Doc. 22, Reply). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

Plaintiff Right at Home Glass alleges that from November 2, 2017 through May 7, 2018, it replaced and installed glass for 139 customers who had automobile insurance through Defendant. (Doc. 1-3, Complaint (Compl.) ¶ 15.) When Plaintiff submitted invoices to Defendant for its work, Defendant paid only a portion of each invoice instead of paying the entire amount owed. (Compl. ¶ 18.) In total, Plaintiff asked for $128,986.46, but Defendant paid only $55,183.25—leaving an outstanding balance of $73,803.21 on the 139 invoices. (Compl. ¶ 19.) Plaintiff alleges that it attempted to collect the outstanding balance, but Defendant refused to pay it. (Compl. ¶ 22.)

For each glass replacement and installation service, Plaintiff alleges that the customer assigned his or her rights to collect payment from Defendant under the customer's insurance policy in consideration for Plaintiff's work. Plaintiff issued two documents for each customer—a work order and an invoice—that purportedly contained assignment language. The assignment language on the work orders provided to the Court is illegible. (Doc. 18-1, Ex. B.) The assignment language on the invoices states as follows:

> Assignment of Proceeds, Benefits and Authorization to Pay: TERM NET 30
>
> I hereby authorize the glass repairs and assign to RIGHT AT HOME GLASS (hereinafter "Assignee") any and all Benefits from the insurer providing coverage for the repaired vehicle. This assignment of benefits is given in consideration for the glass repairs performed by Assignee. This acts as an assignment of rights and benefits to the extent of the services provided by Assignee. If the insurer refuses to make payments in full upon demand by me or Assignee, I hereby assign and transfer to Assignee any and all causes of action and all proceeds therefrom, and further authorize Assignee to prosecute said causes of action either in my name or Assignee's name. I further authorize Assignee to compromise, settle or otherwise resolve claims and/or cause of actions as it may see fit. If my insurer sends payment to me, I will immediately forward payment to Assignee.

(Doc. 18-1, Ex. B.)

During the spring and summer of 2018, April Nasic, a representative for Plaintiff, and Leah Cannon, a representative for Defendant, communicated about Plaintiff's invoices that had outstanding balances.[1] On March 29, 2018, Ms. Nasic emailed Ms. Cannon "the next set of invoices totaling 164 claims[] that we are invoking appraisal for" under the insurance policies, with the name and phone number of Plaintiff's appraiser. (Doc. 18, Ex. D–F, Nasic/Cannon Emails at 6.) Ms. Nasic followed up with emails to Ms. Cannon on March 30 and April 3 to ask if Ms. Cannon had received the appraisal claims. (Nasic/Cannon Emails at 7.) Ms. Cannon responded on April 3: "I did receive your email and the 164 claims you are invoking appraisal on. We will get these processed and sent over to [the appraiser] just as soon as possible!" (Nasic/Cannon Emails at 8.) On June 26, Ms. Nasic emailed Ms. Cannon asking, "When will the next set of claims be released? I

---

[1] Ms. Nasic's job title was Legal Department Manager, and Ms. Cannon's job title was Senior Claims Resoluation Specialist.

am working on an offer letter for you as discussed and should have that over to you this week. Please keep me posted on the 450 PLUS claims I resent over for appraisal beginning of this month." (Nasic/Cannon Emails at 12.) Ms. Nasic sent follow up emails on June 28 and July 2 asking if Ms. Cannon had any updates. (Nasic/Cannon Emails at 12–13.)

Ms. Nasic and Ms. Cannon communicated by phone and email in July 2018—but the parties disagree as to exactly what was said. Each party blames the other for frustrating the appraisal process. Ms. Nasic refers to two phone calls in which Ms. Cannon "would not commit to releasing the claims for appraisal" and "indicated that [] the Defendant [] did not believe they had to honor [Plaintiff's] request for appraisal." (Nasic Decl. ¶¶ 23–25.) On the other hand, Ms. Cannon avers that on July 6, Ms. Nasic sent her an email with "an ultimatum that [Defendant] could either accept the national pricing agreement or the alternative would be that [Plaintiff] would not move forward with their appraisal request and would rather pursue the claims through litigation[.]" (Doc. 22, Ex. A, Declaration of Leah Cannon (Cannon Decl.) ¶ 19). Ms. Cannon states that subsequent phone calls with Ms. Nasic "confirmed []that she was only interested in either securing a national pricing agreement or litigating." (Cannon Decl. ¶ 22.) In addition, Ms. Cannon avers that Defendant never denied Plaintiff's right to appraisal in Arizona. (Cannon Decl. ¶ 25.)

On October 22, 2018, Plaintiff filed this lawsuit alleging claims for breach of contract (Count One), breach of the duty of good faith and fair dealing (Count Two), and unjust enrichment (Count Three). (Compl. at 6–8.) Defendant has now moved to dismiss Plaintiff's Complaint in its entirety or compel appraisal.

## II. LEGAL STANDARDS

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence

presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

"[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513-14 (2006).

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Assignment Agreements

Defendant argues that Plaintiff's entire Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Plaintiff does not have standing to file suit against Defendant. (Mot. at 4.) Specifically, Defendant argues that Plaintiff, who is not a party to the insurance contract between the customers and Defendant, failed to prove that the customers assigned their rights under the insurance contract to Plaintiff. (Mot. at 5.) Defendant's two main arguments are that (1) Plaintiff did not sufficiently allege the existence of the assignment agreement in its Complaint, and (2) even if Plaintiff did sufficiently allege the existence of the assignment agreement, the agreement itself is deficient. (Reply at 2–5.)

#### 1. Plaintiff provided sufficient evidence of the assignment agreement.

Defendant argues that Plaintiff's Complaint "alleged only conclusory statements regarding the existence of an assignment agreement" and did not include "the actual language of the assignment." (Reply at 2.) Since Plaintiff did not directly cite the language from the assignment agreements or attach the assignment agreements to its Complaint, Defendant argues that the Complaint should be dismissed. (Reply at 2.) Plaintiff counters that the "documents [it] submitted with the Complaint and this Response demonstrate that Plaintiff is an assignee of [Defendant's] insureds and therefore has standing to bring this lawsuit." (Resp. at 4.) Plaintiff argues that evidence of an assignment "can be (and in practice, usually is) presented to the Court only after a Defendant files a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." (Resp. at 3.)

The burden of proof is on Plaintiff, the party asserting jurisdiction, to show that the Court has subject matter jurisdiction. *Indus. Tectonics, Inc.*, 912 F.2d at 1092. The Court need not limit itself to the allegations in the complaint and may take into account "facts

that are [] alleged on the face of the complaint [and] contained in documents attached to the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). "For motions to dismiss under Rule 12(b)(1), unlike a motion under Rule 12(b)(6), the moving party may submit affidavits or any other evidence properly before the court." *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* "[T]o prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts." *Britton v. Co–op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) (citing Restatement (Second) of Contracts §§ 317(1), 324 (1981))

Plaintiff did not cite language from the assignment agreement in its Complaint, nor did it attach evidence to its Complaint that included assignment language.[2] However, once Defendant filed its Motion to Dismiss challenging Plaintiff's standing, Plaintiff submitted two types of documents to prove the assignment—the invoices and the work orders. The Court cannot consider the alleged assignment language on the work orders because it is illegible. But the invoices contain a paragraph entitled "Assignment of Proceeds, Benefits and Authorization to Pay," stated in full above, which demonstrates that the insureds "meant to assign [their] rights and obligations" to Plaintiff. *Britton*, 4 F.3d at 746. The customers' intent to assign their rights to Plaintiff is further evidenced by the fact that they allowed Plaintiff to bill Defendant directly. Thus, Plaintiff has provided "other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction" in response to Defendant's motion to dismiss under Rule 12(b)(1). *Ass'n of Am. Med. Colleges*, 217 F.3d at 778–79. Consequently, Plaintiff's claims will not

---

[2] In its Complaint, Plaintiff alleged that "Plaintiff procured an assignment of claims from each of the 139 insureds for the replacement and installation of glass," thereby entitling Plaintiff "to all of the insured's rights under the contract as it relates to the replacement and installation of glass." (Compl. ¶¶ 16, 20.) The evidence that Plaintiff provided with its Complaint was an illegible spreadsheet that did not include any text long enough to be an assignment agreement. (Doc. 1, Att. 3, Compl. at 11–12.)

- 6 -

be dismissed solely because Plaintiff failed to include the specific assignment language in its Complaint.[3]

### 2. Defendant is estopped from arguing that the assignment agreements are deficient.

Defendant also attacks the validity of the assignment agreements, arguing that they are deficient because the invoices are not signed by the insureds, only some of the work orders are signed by the insureds, and the assignment language is defective. (Reply at 3–5.) Plaintiff counters that Defendant's arguments are barred by the doctrines of waiver and estoppel because Defendant already made a payment on each invoice. (Resp. at 5.) Defendant asserts that "[s]imply issuing payments to vendors does not amount to a concession that there is a valid assignment, especially since [Defendant] has no record of receiving the invoices, work orders, or documents evidencing an assignment at the time the claims were made or the payments were issued." (Reply at 5.)

"Equitable estoppel precludes a party from asserting a right inconsistent with a position previously taken to the prejudice of another acting in reliance thereon." *McLaughlin v. Jones in and for Cty. of Pima*, 401 P.3d 492, 501 (Ariz. 2017). Here, the customers allowed Plaintiff to bill Defendant directly for Plaintiff's glass replacement and installation work. By making partial payments on Plaintiff's claims, Defendant took the position that its insureds had assigned their rights to the benefits of their insurance policy to Plaintiff. Plaintiff acted in reliance on Defendant's conduct when it accepted the partial payments and then sought to invoke appraisal on the outstanding balance. Defendant is thus estopped from now arguing that the assignment agreements are deficient and Plaintiff lacks standing to file suit against Defendant for the outstanding balance. *Id.*

---

[3] The case that Defendant cites in its Reply does not compel the opposite conclusion. *Sequoia Partners, LLC v. Federal Deposit Insurance Corporation* involved a 12(b)(6) motion to dismiss for failure to state a claim, and the plaintiff failed to sufficiently allege the essential terms of a loan agreement even after several opportunities to do so. 2012 WL 1657049, at *4 (D. Or. Mar. 13, 2012), *report adopted*, 2012 WL 1657066 (D. Or. May 10, 2012).

**B. Appraisal**

Defendant next asserts that "[t]o the extend that Plaintiff can satisfy its burden of proving that it has standing to sue on the insurance agreement at issue in this case, its rights as an assignee are those under the insurance agreement, which call for appraisal of this dispute." (Mot. at 6.) Defendant argues that this Court lacks subject matter jurisdiction until the contractual appraisal process is complete and that the claims should be dismissed with prejudice. (Mot. at 7.) In response, Plaintiff contends that Defendant failed to provide sufficient evidence to show that the Libertyguard Auto Policy attached to its Motion was the policy in place between Defendant and its insureds during the relevant time period—and that therefore Defendant has not shown that the claims were subject to appraisal. (Resp. at 6.) Paradoxically, Plaintiff also contends that Defendant waived its right to invoke appraisal when it "deliberately refused to respond to Plaintiff's requests for appraisal." (Resp. at 6.) As a preliminary matter, because Plaintiff admits that it invoked the appraisal process, it is estopped from now arguing that appraisal language was not in the insurance policy. *McLaughlin*, 401 P.3d at 501.

The relevant appraisal clause states, "if you and we do not agree on the amount of loss, either may demand an appraisal of the loss." (Doc. 5, Ex. 1, Libertyguard Auto Policy at 10.) Arizona law treats appraisal requests pursuant to a contractual provision the same as arbitration requests. *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365, 1369 (Ariz. Ct. App. 1994); *Hanson v. Commercial Union Ins. Co.*, 723 P.2d 101, 103 (Ariz. Ct. App. 1986). Thus, as with arbitration clauses under the Federal Arbitration Act (FAA), appraisal clauses are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Ori v. Am. Family Mut. Ins. Co.*, No. CV-2005-697-PHX-ROS, 2005 WL 3079044, at *2 (D. Ariz. Nov. 15, 2005).

Arizona law has established that a party to a contract may waive its right to enforce an arbitration or appraisal agreement by its conduct. *See Forrest City Dillion, Inc. v. Superior Court*, 675 P.2d 297, 299 (Ariz. Ct. App. 1984). However, because public policy favors arbitration and appraisal, Arizona courts generally do not favor waivers of

arbitration or appraisal agreements. *See Meineke*, 892 P.2d at 1370 (Ariz. Ct. App. 1994) (citing *U.S. Insulation v. Hilro Constr. Co.*, 705 P.2d 490, 498 (Ariz. Ct. App. 1985)). A party waives an appraisal clause with conduct that is "inconsistent with the use of the [appraisal] remedy; in other words, conduct that shows an intent not to [appraise]." *Id.* (citing *EFC Dev. Corp. v. F.F. Baugh Plumbing & Heating, Inc.*, 540 P.2d 185, 188 (Ariz. Ct. App. 1975)). Inconsistency is usually found from "such conduct as preventing [appraisal], making [appraisal] impossible, proceeding at all times in disregard of the [appraisal] clause, expressly agreeing to waive [appraisal], or unreasonable delay." *EFC Dev. Corp.*, 540 P.2d at 188.

Plaintiff argues that Defendant deliberately refused to engage in the appraisal process and thus waived its right to appraisal. (Resp. at 6–9.) The evidence presented shows that Plaintiff's representative, Ms. Nasic, invoked appraisal in March 2018, and that Defendant's representative, Ms. Cannon, initially agreed to appraisal. The parties disagree as to what happened in the following months, and both argue that the other side abandoned the appraisal option. The evidence that Plaintiff has presented is not sufficient to show that Defendant engaged in "such conduct as preventing [appraisal], making [appraisal] impossible, proceeding at all times in disregard of the appraisal clause, [or] expressly agreeing to waive [appraisal.]" *EFC Dev. Corp.*, 540 P.2d at 188.

Plaintiff also argues that Defendant waived its right to appraisal by waiting eight months to invoke appraisal, thus causing unreasonable delay. (Resp. at 7–10.) However, untimeliness by itself does not rise to repudiation by unreasonable delay. *City of Cottonwood v. James L. Fann Contracting*, 877 P.2d 284, 290 (Ariz. Ct. App. 1994). In order to show unreasonable delay, Plaintiff must show "clear evidence of 1) prejudice suffered by the other party and 2) a demand for [appraisal] so egregiously untimely and inconsistent with an intent to assert the right to [appraisal] that an intentional relinquishment can be inferred." *Meineke*, 892 P.2d at 1370. Here, both parties allegedly caused delay in proceeding to appraisal. Plaintiff has not provided clear evidence that it would be prejudiced by submitting its claims to appraisal or that Defendant's current

request for appraisal is "egregiously untimely." *Id*. Particularly in view of the policy favoring appraisal, the Court concludes that Defendant did not waive its right to invoke the appraisal clause under the policy.

### C. Bad Faith Claim

Defendant argues that Plaintiff may not bring a bad faith claim (Count Two) against it "because the tort of insurance bad faith belongs only to the insured and is not assignable." (Mot. at 10.) Plaintiff contends that "[w]hen an assignee steps into the shoes of an insured pursuant to a valid assignment, it succeeds to all the rights of the insured, including the right to have the insurer deal with it (the assignee) in good faith[.]" (Resp. at 13.) Plaintiff also asserts that the allegations of bad faith arise from Defendant's handling of the claim after the assignment from the customers to Plaintiff—so the bad faith claim was never assigned. (Resp. at 13.) Defendant responds that, first, there is no allegation that Defendant acted in bad faith towards its insureds, and second, the law is clear that there is no third-party bad faith in Arizona. (Reply at 7.)

Plaintiff does not argue that Defendant acted in bad faith towards its insureds. Rather, Plaintiff alleges that "Defendant's failure to pay the outstanding balance on the invoices constitutes a breach of their contractual obligations *to Plaintiff* as an assignee under the contract." (Compl. ¶ 28.) (emphasis added). The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. National Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). Arizona law is unsettled as to whether a third party that has received a valid assignment of an insured's rights under an insurance contract may bring a bad faith claim against the insurer. *See Farmers Ins. Exch. V. Udall*, 424 P. 3d 420 (Ariz. Ct. App. 2018) (declining to address whether assignment agreements between insureds and third-party repair company purported to assign bad faith claim). As explained below, the Court will stay Plaintiff's bad faith claim while Plaintiff's claims go through the appraisal process.

### D. Unjust Enrichment Claim

In Count Three, Plaintiff alleges that "Defendant has been unjustly enriched, and Plaintiff unjustly impoverished, to the extent that Defendant has received valuable consideration from Plaintiff for the value of the replacement and installation of the glass which Defendant agreed to, but did not, pay in accordance with the terms of the contract." (Compl. ¶ 11.) Defendant argues that Plaintiff's unjust enrichment claim fails as a matter of law because it seeks the same relief sought under Plaintiff's breach of contract claim (Count One), and Defendant does not contest that the insurance policies are valid contracts. (Mot. at 14–15.) Plaintiff asserts that it is permitted to plead unjust enrichment in the alternative to its breach of contract claim because Defendant has challenged Plaintiff's standing to file a breach of contract claim. (Resp. at 13–14.)

The Court has decided above that Plaintiff, as assignee of Defendant's insureds under the insurance contract, does have standing to file a breach of contract claim. Neither party disputes that the insurance contracts are valid contracts. (Mot. at 11.) And Plaintiff seeks the same relief in its unjust enrichment claim as it does in its breach of contract claim, which will be resolved in the appraisal process. Since "there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Trustmark Ins. Co. v. Bank One, Arizona*, NA,48 P.3d 485, 492 (Ariz. Ct. App. 2002); *see also Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976). Therefore, Plaintiff's unjust enrichment claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### E. Stay of Proceedings

Having determined that Defendant is entitled to invoke the appraisal clause, the Court will issue a stay as to the claim subject to that appraisal. Plaintiff's bad faith claim, however, is not subject to appraisal. The Court must determine if that claim should also be stayed or if it should be allowed to proceed. "Important factors to consider when determining whether the non-arbitrable issues should proceed include the predominance of the arbitrable claims, the merit of the non-arbitrable claims, the court's concern with

1  controlling its own docket, and overall judicial economy." *See Ori*, 2005 WL 3079044, at
2  *4 (citing *F.D. Imp. & Exp. v. M/V Reefer Sun*, 248 F. Supp. 2d 240, 251 (S.D.N.Y. 2002)).
3  Here, the appraisable claim—for compensation for Plaintiff's glass replacement and
4  installation services—predominates in this lawsuit, and Plaintiff's bad faith claim depends
5  in part on it. The Court thus finds that staying the non-appraisable claim is the most
6  efficient way to manage this litigation.

### F. Two Member Cases

There are two other substantially similar member cases pending in this Court. In CV-19-02781-PHX, Plaintiff Right at Home Glass filed a nearly identical Complaint against Defendant Safeco Insurance Company of America, and Safeco filed a nearly identical Motion to Dismiss. In CV-18-04191-PHX, Plaintiff DNS Auto Glass Shop filed a nearly identical Complaint against Defendant Liberty Mutual, and Liberty Mutual filed a nearly identical Motion to Dismiss. On January 10, 2019, the Court granted Liberty Mutual's uncontested Motion to Consolidate the present case with CV-18-04191-PHX. On September 18, 2019, the Court granted Safeco's uncontested Motion to Consolidate the present case with CV-19-02781-PHX. For all the reasons stated above, the Court comes to the same conclusion on Defendants' Motion to Dismiss and Motion to Compel Appraisal in CV-19-02781-PHX and CV-18-04191-PHX.

IT IS THEREFORE ORDERED granting in part and denying in part Defendant's Motion Dismiss and Motion to Compel Appraisal (Doc. 5). Defendant's motion to compel appraisal is granted. Defendant's motion to dismiss Plaintiff's unjust enrichment claim (Count Three) is granted. But Defendant's motion to dismiss Plaintiff's breach of contract claim (Count One) and bad faith claim (Count Two) is denied.

. . . .

. . . .

. . . .

. . . .

. . . .

IT IS FURTHER ORDERED staying these proceedings pending the results of the appraisal. The parties shall advise the Court within 14 days of the completion of the appraisal process whether the parties have resolved this matter in full or whether the Court should lift the stay and this matter should proceed. If the appraisal process is not completed by March 20, 2020, the parties shall file a joint status report on that date.

Dated this 23rd day of September, 2019.

Honorable John J. Tuchi
United States District Judge